# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE SEARS, ROEBUCK & CO. ERISA LITIGATION. | ) ) ) ) ) ) ) | No. 02 C 8324<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, participants in a Sears Employee Retirement Income Security Act of 1974 ("ERISA") plan, sued Defendants – Sears, Roebuck & Co.; Alan Lacy; Paul Liska; Thomas Bergmann; Greg Lee; Glen Richter; the Sears Board of Directors; unnamed members of the ERISA plan Investment Committee; and the Investment Committee – for violations of ERISA. Now before the Court is Plaintiffs' Motion for an Order Directing Class Notice.

## LEGAL STANDARD

The Plaintiff class was certified pursuant to Federal Rule of Civil Procedure 23(b)(1). The notice requirement for classes certified under Rule 23(b)(1) is permissive and not mandatory, pursuant to Rule 23(c)(2)(A). The Court may require, "for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such a manner as the court may direct." *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 502 n.8 (N.D. Ill. 1998).

## BACKGROUND

The facts, for the purposes of this motion, are taken as true from Plaintiffs' Complaint. Plaintiffs, Bill Kehr, Michael G. Cheperka, Kenneth Hawkins, and Margaret Villano, are participants in a 401(k) Savings Plan (the "Plan"). Defendant Sears, Roebuck, and Co. ("Sears") sponsored and administered the Plan. Another Defendant, the Investment Committee, had the authority to choose the type of investment options, a particular investment style, and make other investment decisions with respect to the Plan. Defendant Alan Lacy was, at all relevant times, the Chief Executive Officer, President, and Chairman of the Board at Sears. The Investment Committee distributed Summary Plan Descriptions and Plan prospectuses to all Plan participants, pursuant to relevant federal statutes.

Defendants – Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter – who, at all relevant times, were high-ranking Sears executive officers, were members of the Investment Committee, along with thirty unnamed fiduciary Defendants (collectively the "Committee Defendants"). The named members of the Investment Committee had substantial knowledge of Sears' business plans, operations, finances, and access to internal company reports and memoranda. These Defendants were also familiar with Sears' accounting and financial practices.

Defendants – Hall Adams, Jr.; Brenda Barnes; James Cantalupo; Donald Carty; W. James Farrell; Michael Miles; Hugh Price; Dorothy Terell; and Raul Yzaguire – were, at all relevant times, members of the Sears Board of Directors (collectively the "Director Defendants"). The Sears Board of Directors is the primary personification through which Sears effectuated its Plan-related duties.

*Specific Plan Provisions*

The Plan allows eligible employees to contribute to the Plan through payroll deductions. Participants may then direct their investment into one or more of several funds available under the Plan. One of the available funds is the Sears Stock Fund.

The Plan designates Sears as a named fiduciary, but only for the non-investment operations of the Plan. The Plan delegates responsibility for investment decisions to the Investment Committee, including those related to the Sears Stock Fund. The Sears Board of Directors is given the authority to appoint members to the Investment Committee. § 1.3.

The Plan also requires that the Sears Stock Fund must invest exclusively in Sears Company Stock. Plan § 6.8. Sears is required to offer the Sears Stock Fund to eligible employees as one of the investment funds offered under the Plan. Plan § 6.1.

*Sears' Financial Statements*

In financial reports filed with the Securities and Exchange Commission ("SEC"), Sears misrepresented its true financial health and profitability. Specifically, in Sears' 2001 annual report, Sears stated on SEC Form 10-K that its provisions for uncollectible accounts were calculated to be $1.344 billion in 2001. Sears also represented that it maintained an adequate allowance for these uncollectible accounts. Sears also filed numerous press reports, stating that the company was extremely profitable, revenue was up, and earnings were expected to increase.

On May 7, 2002, Sears then filed its first-quarter financial report on SEC Form 10-Q. The report indicated that the provisions for uncollectible accounts increased from $190 million to $371 million in the first quarter. This change was the result of additional credit card receivable balances recorded when Sears consolidated its securitization structure for financial reporting

purposes in the second quarter of 2001. Once again, press reports issued by Sears projected substantial growth. Based on all this information, and in spite of a general economic downturn throughout the country, Sears stock reached $59.90 per share in the early summer of 2002.

On August 9, 2002, Sears filed another quarterly Form 10-Q report with the SEC. This report stated that Sears was making a conservative accounting change in determining its uncollectible account allowances. In October of 2002, Sears began to issue a series of reports, stating that the financial reports as originally reported for the first and second quarters of 2002 were incorrect. Sears explained that it was amending its previous reports pursuant to guidance from the SEC, and that uncollectible accounts were misstated and were required to be significantly increased. Also, net operating income was significantly reduced.

Sears also reported similar problems with its credit card division. On October 4, 2002, Sears issued a press release, stating that Defendant Liska would take over the credit card division. On October 7, 2002, Sears unexpectedly warned that its third-quarter earnings would fall below expectations because of a profit slowdown in its credit card division. This forecast was true, and Sears' earnings decreased significantly in the third quarter of 2002. In reaction to Sears' announcements, Sears stock price dropped significantly. On October 17, 2002, Sears stock reached $23.15 a share on trading of 36 million shares.

Just before the Class Period began, on January 17, 2002, Sears had over $1.1 billion of assets in the Sears Stock Fund, representing one-third of all Plan assets. When the stock price dropped, Plaintiffs suffered losses resulting from their own investments in the Sears Stock and matching investments made by Sears.

## ANALYSIS

The Plaintiffs seek pre-disposition Class Notice. The Plaintiffs assert that the sheer size of the loss, combined with the fact that the class members may supply information to the Plaintiffs' counsel, justifies the Class Notice. Further, the Plaintiffs point out that a Class Notice has already been disseminated in a related securities case currently pending before Judge Bucklo, *In Re Sears, Roebuck & Co. Securities Litigation*, No. 02-C-7527, which shares some class members with the underlying action. Plaintiffs argue that it is, therefore, necessary to issue a Class Notice to make class members in the instant action aware of the distinct nature of this case and eliminate any confusion regarding the claims with respect to their retirement account losses in the two cases.

The Defendants, citing *In re Electronic Data Systems Corp. "ERISA" Litigation*, 226 F.R.D. 559 (E.D. Tex. 2005), counter that because the alleged damages were caused to the Plan, and not to any individual class member, the expense and burden of sending Class Notice to the members outweigh any of the benefits raised by the Plaintiffs. The Defendants are correct that a claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary. 29 U.S.C. § 1002(21)(A). However, Courts have allowed pre-disposition dissemination of class notice in complaints alleging breach of a fiduciary duty under ERISA. *See e.g., Walsh v. The Great Atlantic & Pacific Tea Co., Inc.*, 726 F.2d 956 (3rd Cir. 1983). Further, participants in defined contribution plans have an interest in the assets held in trust for their retirement. Therefore, members of the Plaintiff Class have an interest in the outcome of this litigation and will collectively share in the proceeds if a judgment were entered on their behalf.

The Defendants raise a concern that class members may be confused about their rights in this litigation – both with respect to the nature of the damages and with respect to an overlap with the litigation pending before Judge Bucklo. However, in this case, potential confusion is best addressed by providing clear and accurate information to the class members by careful wording of the Class Notice.

The Defendants properly raise concerns that providing Class Notice would be complex and expensive. However, the Plaintiffs point out that the information is available from the Plan's record keeper and that both publication and notice can be provided within 30 days of the approval of the contents of the Class Notice.

The Defendants object to the language of the Proposed Notice tendered by the Plaintiffs. The parties are directed to confer to resolve the dispute regarding the language in the notice and, within 14 days, to submit a Joint Proposed Notice to the Court to the Court for approval.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for an Order Directing Class Notice is granted. The parties shall submit a Joint Proposed Class Notice within 14 days of this Order. The Defendants are ordered to deliver to the Plaintiffs' counsel the last-known names and addresses of all class members within 14 days of this Order. The matter is continued March 15, 2006 at 9:00 a.m. for status.

Dated: February 15, 2006

JOHN W. DARRAH
United States District Judge